IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0558
════════════
 
Reliance National Indemnity 
Company, L&T, J.V., 
And Lamar Construction, Inc., 
Petitioners,
 
v.
 
Advance’d Temporaries, Inc., 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 18, 
2006
 
Justice Medina delivered the opinion of 
the Court.
In this case, 
we decide whether a temporary employment agency, which places workers at a 
construction project under a contract with a subcontractor, “furnishes labor” 
within the meaning of Chapter 53 of the Texas Property Code, thus qualifying for 
a mechanic’s lien. The trial court denied the temporary agency’s lien, 
concluding that it had not “furnish[ed] labor” within the statute’s meaning. 
See Tex. Prop. Code § 
53.021 The court of appeals, however, reversed the 
trial court’s judgment and remanded the case for further proceedings. 165 S.W.3d 1. Although we do not agree with the court of 
appeals’ analysis in all respects, we do agree that the temporary employment 
agency furnished labor within the statute’s meaning and therefore affirm. 
I
L & T, 
J.V. (“Lamar”) agreed to serve as general contractor during construction of the 
Corpus Christi Crosswinds Apartments and obtained a performance bond as its 
contract with the project’s owner required. Thereafter, Lamar subcontracted with 
Cesar Gonzalez, doing business as Gonzalez Construction, who agreed to frame, 
drywall, and roof the apartment project. Gonzalez, however, did not have an 
adequate work force for the job, and therefore sought additional workers from 
Advance’d Temporaries, Inc.
The agreement 
between Gonzalez and Advance’d identified these 
temporary workers as Advance’d’s employees and 
obligated Advance’d to obtain workers’ compensation 
and general liability insurance for them. Advance’d 
further offered a limited guarantee of its employees’ work. Advance’d agreed to promptly replace any temporary worker, 
upon notification within the first two hours of work, if Gonzalez was not 
satisfied with the worker’s performance. The contract further provided that 
temporary workers were not to operate machinery, automotive equipment, or work 
on ladders or scaffolds without Advance’d’s prior 
written approval. Finally, Gonzalez agreed to pay Advance’d $2500 in liquidated damages if he hired any 
temporary worker within three months of the agreement.
Advance’d recruited and supplied more than 100 workers for 
Gonzalez, qualified the legal status of each worker, and completed the necessary 
paper work and insurance requirements. Advance’d also 
paid the temporary workers and their payroll taxes, invoicing Gonzalez weekly 
for its services. This relationship was only a few months old when Lamar 
abruptly terminated Gonzalez’s work.
Lamar 
apparently paid Gonzalez all that was owed for his work, but Gonzalez failed to 
pay the full amount owed to Advance’d. Advance’d nevertheless took care of 
the temporary workers, paying them for their labor. Advance’d then gave notice of its 
claim under the mechanic’s lien statute, which Lamar disputed. Advance’d thereupon filed an affidavit claiming a mechanic’s 
lien. Advance’d sued Gonzalez for the balance owed 
under its contract after it was unable to collect from Gonzalez’s or Lamar’s 
surety bond. The Crosswinds Apartments, Lamar, and the surety were also joined 
in the litigation.
Following a 
bench trial, the judge rendered judgment against Gonzalez, but denied Advance’d recovery against the other parties. The judge 
concluded that Advance’d was not entitled to recover 
against Lamar’s surety bond because Advance’d had not 
furnished labor as the mechanic’s statute requires, but had simply extended 
credit to Gonzalez for its payroll. 
Advance’d appealed, complaining that it had furnished labor 
at the Crosswinds project under a contract with a subcontractor and was thus 
entitled to the benefits of the mechanic’s lien statute, including a judgment 
against the general contractor’s bond. The court of appeals agreed, reversed the 
trial court’s judgment, and remanded the case for the trial court to determine 
the remaining issues regarding the validity and amount of Advance’d’s claim. 165 S.W.3d 
1.
II
Lamar and its surety, Reliance National Indemnity Co. (hereafter 
“Reliance”), appeal, asserting three errors. First, Reliance argues that, 
contrary to the court of appeals’ analysis, Advance’d 
did not “furnish labor” on the Crosswinds project and 
thus was not entitled to a mechanic’s lien. In a related issue, Reliance argues 
that the court of appeals applied an erroneous standard of review by mistakenly 
viewing the question of whether Advance’d “furnished 
labor” as a legal question rather than a fact question. Finally, Reliance 
complains that even if Advance’d might have been entitled 
to a lien, it did not timely perfect its rights, and the court erroneously 
failed to consider that as an alternative basis for affirming the trial court’s 
judgment.
A
Relevant to 
the first two issues is how one qualifies under the mechanic’s lien statute as a 
person who “furnishes labor.” Tex. Prop. 
Code § 
53.021(a). The statute provides, in relevant part, that a 
person has a lien if the person “labors . . . or furnishes labor or materials 
for construction or repair in this state of [] a house, building, or 
improvement” and “the person labors . . . or furnishes the labor or materials 
under or by virtue of a contract with the owner or the owner’s agent [which 
includes contractors and subcontractors among others].” Id. § 
53.021(a)(1),(2). Chapter 53 defines “labor” as “labor 
used in the direct prosecution of the work” and defines “work” as “any part of 
construction or repair performed under an original contract.” Id. §§ 53.001(3), 
(14). An “original contract” is “an agreement to which an owner is a party 
either directly or by implication of law.” Id. § 53.001(7). These provisions led 
the court of appeals to conclude that Chapter 53 protects those who labor in 
Texas as well 
as those who furnish labor under contract for the benefit of an owner’s 
construction project. 165 S.W.3d at 4-5.
Reliance 
argues, however, that Advance’d did not “furnish 
labor” for the Crosswinds project because it did not control or supervise the 
temporary workers and was not responsible for the quality of their work. 
Reliance further submits that the temporary workers were Gonzalez’s employees 
under the borrowed-employee doctrine. See St. Joseph Hosp. v. Wolff, 94 
S.W.3d 513, 538 (Tex. 2003)(quoting Comm. on Pattern Jury 
Charges, State Bar of Tex., Texas Pattern Jury Charges: Malpractice, Premises 
& Products PJC 52.2 (1997)(“An employee ceases to be an employee of his 
general employer if he becomes the ‘borrowed employee’ of another.”)). Reliance 
then reasons that Advance’d did not furnish labor for 
the project because it was not the employer of the temporary workers who 
actually performed the work. The court of appeals concluded, however, that the 
temporary workers were Advance’d’s employees, and we 
agree.
The contract 
clearly identifies the temporary workers as Advance’d’s employees and makes Advance’d the responsible party. Advance’d was responsible for recruiting and screening these 
workers. Advance’d was responsible for hiring, firing, 
paying and insuring them. Advance’d also had the final 
word on whether these workers could be exposed to certain working 
conditions.
Clearly, 
Advance’d did not control the details of the work at 
the construction site, but that does not mean it ceased to be their employer. 
The borrowed-employee doctrine does not provide otherwise. See St. Joseph 
Hosp., 94 S.W.3d at 537-38(discussing the borrowed-employee doctrine). That 
tort doctrine is concerned with vicarious liability and apportionment of 
responsibility for employees who have more than one master. Id. The doctrine 
has no application here because this case is one of contract and the 
responsibilities are spelled out in the parties’ agreement. 
The nature of 
the temporary employment business is that clients of the temporary employment 
agency will direct and control the work that needs to be done; otherwise, the 
agency’s service would have little value to the client. The contract indicated 
that the temporary workers were, and continued to be, Advance’d’s employees and the responsibility Advance’d assumed for these workers confirms that 
relationship. Moreover, Advance’d retained a degree of 
control over these workers, requiring prior notice and agreement for certain 
hazardous duties, immediate notification of any injury, paid time and one-half 
for certain holidays, and a minimum work day of four hours per employee. 
Gonzalez had the right to reject any temporary worker, but he could not dismiss 
the worker or affect that worker’s continuing relationship, if any, with Advance’d. In sum, Advance’d did 
not merely perform administrative services but rather assumed actual 
responsibility as the employer of these workers.
Other courts 
agree that a temporary employment agency’s claim to a mechanic’s lien is 
ordinarily justified by its relationship to the temporary workers. See, e.g., 
Eastland Fin. Servs. v. Mendoza, 43 P.3d 375, 380 (N.M. App. 2002); 
Contractors Labor Pool Inc., v. Westway 
Contractors, Inc., 53 Cal. App. 4th 152, 61 
Cal. Rptr. 2d 715, 722 (1997). The California court 
identified employer status as the “crucial factor” for lien rights, writing:
 
The 
designation of a person as the “employer” of another is not a mere label . . . . 
Rather, such designation signifies a legal relationship in which the employer 
has legal responsibilities to the employee and to third parties, which are 
absent where a person merely supervises another’s employees or disburses to such 
employees wages which are due from the other person to the employees . . 
. .
 
 
Contractors 
Labor Pool, 61 Cal. Rptr. 2d at 722 
(emphasis in original).
In this case, 
Advance’d hired construction workers as its employees, 
who then labored on a construction of an improvement in this state, by virtue of 
a contract with an owner, contractor, or subcontractor, thus satisfying the 
statutory requirement of the mechanic’s lien statute. Tex. Prop. Code § 53.021(a). Under 
these circumstances, Advance’d is no different from a 
supplier who furnishes lumber, pipe, or shingles. Instead of materials, however, 
Advance’d furnished labor, paying the workers for 
their services, just as a hardware supplier might pay for the hinges, doorknobs, 
and fixtures it provides to a construction project. We therefore conclude that, 
because the temporary workers here were Advance’d’s 
employees, Advance’d furnished labor by providing 
these workers to Gonzalez for work at the Crosswinds construction project.
B
Reliance also 
attacks the court of appeals’ decision from a procedural perspective, arguing 
that the court applied the wrong standard of review. Among the trial court’s 
findings of fact and conclusions of law was the conclusion that Advance’d was not entitled to recover under the surety bond 
because it “did not perform ‘labor’ as that term is defined in the mechanic’s 
lien statutes.” The court of appeals reviewed this conclusion of law as a legal 
question, ultimately disagreeing with the trial court. Reliance submits that the 
question is actually one of fact that should have been reviewed under a 
sufficiency of the evidence standard rather than the court of appeals’ de novo 
approach.
Appellate 
courts review legal determinations de novo, whereas factual determinations 
receive more deferential review based on the sufficiency of the evidence. What 
might otherwise be a question of fact becomes one of law when the fact is not in 
dispute or is conclusively established. See Tenneco Inc. v. Enter. Products 
Co., 925 S.W.2d 640, 643 (Tex. 1996). The relevant legal question here 
is whether the mechanic’s lien statute applies to this temporary employment 
agency, but that determination rests on the existence of the factual basis 
required by the statute; i.e., whether Advance’d 
furnished labor to a Texas construction project under a contract with the owner 
or its agent. 
Reliance 
contends that some of these facts were at issue and that the court of appeals 
improperly substituted its view of the evidence for that of the trial court. For 
example, Reliance submits that Advance’d’s contract 
was inadequate because it did not identify the Crosswinds project as the 
workplace for the temporary workers. As a legal matter, the mechanic’s lien 
statute does not require this, but more importantly, the temporary workers 
undisputedly did labor for the owner’s agent, under contract, at the Crosswinds 
project. Reliance’s factual dispute is therefore immaterial. Similarly, Reliance 
reprises its argument that Advance’d did not control 
the temporary workers at the construction site and thus did not furnish labor. 
In the parlance of this procedural attack, Reliance’s argument is that this lack 
of control at the work site is some evidence that Advance’d did not furnish labor. But again the factual 
dispute is immaterial. Gonzalez’s control over the work site does not contradict 
or supplant the terms of the contract and is not evidence material to the 
employment question or to the relationship between Advance’d and its employees.
The court of 
appeals, however, proposed a seven-factor test, gleaned from other 
jurisdictions, that it submits as a generic aid for determining when a party has 
“furnished labor.” 165 S.W.3d at 5-6.[1] We do not adopt that test. The court 
applied some of these factors to conclude that Advance’d “furnished labor.” Id. at 6. Although these 
“factors” might be relevant for determining employee status in general, 
balancing them against one another is not the answer to the legal question posed 
here. Whether Advance’d “furnished labor” and is 
therefore entitled to a mechanic’s lien depends on its relationship to the 
workers. Because the evidence conclusively establishes that Advance’d was the employer, and was the party responsible 
for the worker’s pay and related benefits, the court of appeals did not err in 
its legal conclusion that Advance’d was entitled to a 
mechanic’s lien.
C
Finally, 
Reliance argues that the court of appeals erred in not addressing other 
independent grounds supporting the trial court’s judgment. Reliance’s complaint, 
however, focuses on the value of Advance’d’s claim 
rather than its validity. For example, Reliance contends that Advance’d’s claim under the bond should be reduced because 
it failed to timely perfect its claims for part of its services. Advance’d responds that the court of appeals properly 
remanded the valuation issue for the trial court to determine, and we agree. 
See Tex. R. App. P. 43.3 
(court of appeals should render judgment except when remand is necessary for 
further proceedings). 
The court of 
appeals’ judgment is affirmed. 
 
__________________________________________
David M. 
Medina
Justice
 
Opinion 
delivered:         June 8, 2007
 
 







[1] “Those factors 
include: (1) the temporary employment agency’s involvement in selecting and 
screening the workers for hire; (2) the use by the agency of its own criteria 
for hiring the workers; (3) affirmative representations by the agency to the 
workers that it is their employer; (4) the nature of documentation exchanged 
between the workers and the agency at the start of the working relationship; (5) 
the agency’s involvement in training, supervising, and disciplining the workers 
and otherwise retaining control over the workers or directing their behavior; 
(6) whether the agency rather than the contractor determined which workers could 
be terminated; and (7) whether the agency withheld workers rather than services 
on nonpayment by the contractor.”